UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHEYONNA LEWIS,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. C14-5988-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Cheyonna Lewis appeals the ALJ's written decision finding her not disabled. She contends the ALJ harmfully misevaluated her credibility and the medical evidence, and that the Court should therefore reverse the Commissioner's final decision for an award of benefits. Dkt. 14 at 2, 17. As discussed below, the ALJ gave at least one clear and convincing reason, supported by substantial evidence to discount Ms. Lewis's testimony. However, the ALJ harmfully erred in determining Ms. Lewis's Residual Functional Capacity ("RFC") by failing to account for all limitations assessed by Amanda Ragonesi, Psy.D. Because the record does not establish a clear entitlement to benefits, the Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Ms. Lewis is currently 36 years old, has a high school degree, and some community college credits. Tr. 31. She worked as a sales associate, barista, and home attendant caregiver. Tr. 69, 275. In October 2010, she applied for benefits, alleging disability as of January 2010. Tr. 21, 78. Her applications were denied initially and on reconsideration. Tr. 82, 89, 102, 115. The ALJ conducted a hearing on August 22, 2012, and subsequently issued a written decision finding Ms. Lewis not disabled. Tr. 21-36, 43-74.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found at steps one through three that Ms. Lewis last worked in January 2010; that major depressive disorder, posttraumatic stress disorder, attention deficit hyperactivity disorder, morbid obesity, back pain, and cervical degenerative disc disease were severe impairments; and that none of these impairments met the requirements of a Listing.[2] With these impairments, the ALJ found Ms. Lewis had the RFC to perform light work subject to the following additional limitations: she could lift or carry twenty pounds occasionally and ten pounds frequently; she could climb only stairs or ramps; she could only occasionally kneel, crouch, or crawl; and she would work best in a simple, routine work environment and should have no more than occasional public contact. Tr. 26. Based on this RFC, a Vocational Expert ("VE") testified that Ms. Lewis could not perform her past relevant work but that there were jobs in the national economy that she could perform. Tr. 35, 69-71. The ALJ accordingly found Ms. Lewis not disabled at step five. As the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

# DISCUSSION

**A.     Ms. Lewis's Credibility**

Ms. Lewis argues the ALJ committed reversible error by failing to provide clear and convincing reasons to discount her testimony about her mental limitations.  Dkt. 12 at 5-6.  In specific she contends the ALJ erroneously discounted "the severity of her mental limitations," by relying on her academic activities and lack of mental health treatment.  Dkt. 12 at 6.  This argument fails.

The ALJ discounted Ms. Lewis's credibility for several reasons, some of which Ms. Lewis has not contested.  First, the ALJ found that her testimony was inconsistent with the minimal amount of mental health treatment she received.  The Commissioner concedes this ground is invalid.  Dkt 15 at 7.  However, even accepting this concession, the ALJ gave the following valid reasons to discount Ms. Lewis's credibility:  the level of treatment Ms. Lewis sought for her **physical** problems was inconsistent with her testimony about the severity of her physical limits; the objective medical evidence regarding her physical limitations was inconsistent with her testimony; and Ms. Lewis's activities were inconsistent with her testimony about the severity of both her physical and mental limitations.  Tr. 27-30.

Turning first to the ALJ's finding that Ms. Lewis sought little treatment for her allegedly debilitating back problems, an ALJ may properly discount a claimant's statements if the level or frequency of treatment is inconsistent with the level of complaints.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).  The ALJ found Ms. Lewis "testified that she stopped working as an at home care giver in 2009 due to pain in her back and knees.  However, the medical record indicates that she sought little, if any, treatment for back and knee pain in all of 2010."  Tr. 28.  The ALJ's finding that Ms. Lewis's "minimal pursuit of treatment for her physical condition

1  indicates that her pain was not as extreme or limiting as she has alleged," is thus properly
2  supported by substantial evidence of record.  Tr. 28.
3      The record also shows Ms. Lewis's testimony about the severity of her limitations is
4  inconsistent with the medical record.  The record shows that although Ms. Lewis saw her
5  primary care physician numerous times between 2009 and 2010, there is no mention in her
6  medical records about back pain and no indication that she received medical treatment for back
7  pain. Tr. 659-63.  The ALJ also noted that in 2011, Ms. Lewis sought treatment for back and
8  knee pain, and that the objective medical evidence was "not consistent with the degree of
9  limitations alleged." Tr. 28. The record supports this finding.  The record shows that in March
10 2011, Dr. Peter Pfeiffer conducted a physical disability evaluation which showed normal
11 coordination, station, and gait.  Tr. 689-692.  The doctor noted that Ms. Lewis could easily get
12 up and down off the examination table, tie her shoe laces, and dress herself.  Tr.  691. Dr.
13 Pfeiffer diagnosed chronic lumbar strain and low back pain.  *Id.*  He opined the condition was
14 "mildly limiting," would improve with exercise, weight loss, physical therapy, and massage, and
15 " no further intervention beyond this is necessary." Tr. 691.  The doctor also diagnosed "left
16 knee pain" but stated that "her condition should remain stable and is not a limiting complaint."
17 *Id.*
18      Similarly, an October 2011 examination upon complaint of increased back pain revealed
19 lumbar tenderness and spasm but full range of motion, normal straight leg raises, and normal
20 stability and strength.  Tr.  760-61. A short time later, Ms. Lewis presented with intermittent
21 numbness in her left arm and both legs.  Tr. 763, 765, 772, 782-5.  However, an assessment by a
22 neurologist proved "unremarkable" and "without clear physiologic changes seen on
23 examination." Tr. 790.  Nerve conductions studies were "essentially normal."  Tr.  801.  In

REPORT AND RECOMMENDATION - 4

1  short, substantial evidence thus supports the ALJ's finding that Ms, Lewis's testimony about the
2  severity of her physical and pain limitations is inconsistent with the medical record.

3  The ALJ also properly found Ms. Lewis's activities of daily living were inconsistent with
4  her testimony about the severity of both her physical and mental impairments.  Activities of daily
5  living "may be grounds for discrediting the claimant's testimony to the extent that they contradict
6  claims of a totally debilitating impairment." *Molina v. Astrue*, 673 F.3d at 1113.  Here, the ALJ
7  found Ms. Lewis's activities "indicate that she would be able to perform in a simple, routine
8  work environment." Tr. 29-31.  The ALJ arrived at this conclusion by observing that Ms. Lewis
9  provided total care for her disabled son including dressing, feeding, bathing, and toileting, and
10 that she organized his medical appointments and transported him as needed.  Tr.  47-48.  The
11 ALJ further found Ms. Lewis was able to attend community college on a part-time basis, go to
12 the library and church, grocery shop, cook, and clean her house.  Tr. 29-31. And, although she
13 struggled with school, the ALJ observed that Ms. Lewis was also able to earn several A's and
14 B's and carried a grade point average above 3.0 for two quarters.  Tr. 53-54, 311-12.  Based on
15 these activities, the Court cannot say it was not unreasonable for the ALJ to determine that Ms.
16 Lewis was more functional than she alleged.  *Orn* v. *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

17 In sum, Ms. Lewis's daily activities, the limited treatment she sought or received for
18 allegedly debilitating back pain, and inconsistencies between her physical complaints and the
19 objective medical records were clear and convincing reasons upon which the ALJ properly relied
20 to discount Ms. Lewis's testimony.  While the ALJ erred by finding her lack of mental health
21 treatment as a factor against her credibility, reversal is not required.  An ALJ does not commit
22 harmful error by including an erroneous reason among other valid reasons to discount a
23 claimant's credibility.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

REPORT AND RECOMMENDATION - 5

2008). Accordingly, the Court affirms the ALJ's credibility determination.

**B.     Medical Evidence**

Ms. Lewis argues the ALJ misevaluated the opinions of Drs. Ragonesi, Morgan, Regets, and Peterson as to her mental impairments. Dkt. 12 at 10-14. The ALJ is responsible for resolving conflicts in medical testimony and any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. "[W]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

   *1.   Amanda Ragonesi, Psy.D.*

Dr. Ragonesi conducted a psychological evaluation of Ms. Lewis in March 2011. She opined:

> Ms. Lewis's difficulties are ongoing and likely to negatively impact her ability to maintain employment. She is emotionally vulnerable and responds to even minimal stressors with emotional reactivity. Difficulties with distress tolerance, and emotion regulation are likely to interfere with her ability to learn work related tasks, follow instructions, and exercise appropriate judgment. Pervasive feelings of worthlessness and low stress tolerance skills are likely to negatively impact her interpersonal work relationships and ability to adapt to new situations.

Tr. 686. The ALJ considered this assessment and found that the "claimant would perform best in a simple, routine work environment with occasional public contact, consistent with the opinion of Dr. Ragonesi." Tr. 32. Ms. Lewis argues the ALJ erred by failing to account for all limitations found by Dr. Ragonesi including the doctor's opinion that Ms. Lewis's mental health problems affected her "interpersonal work relationships" judgment, emotional vulnerability and reactivity, contact with co-workers or supervisors, and that her ongoing difficulties would negatively impact her ability to maintain employment. Dkt. 12 at 12. The Commissioner

disagrees contending Dr. Ragonesi "did not assess a limitation with regards to Plaintiff's interactions with coworkers or supervisors," and that in any event, the ALJ's findings at step five accommodated any purported "social limitations" Ms. Lewis may have. Dkt. 15 at 10.

The record does not support the Commissioner's contention. First, there is nothing in the record indicating Dr. Ragonesi opined Ms. Lewis had no limitations as to interactions with coworkers or supervisors. Instead, the doctor's opinion on its face cuts the other way. Second, the fact the ALJ assigned some "weight" to Dr. Ragonesi's opinions establishes that the doctor's opinions are relevant and probative evidence. As such the ALJ was required to explain why he was not incorporating all of the limitations the doctor found. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must explain why significant probative evidence has been rejected). The ALJ, however, erred by omitting the interpersonal coworker and supervisor limitation without comment.

Third, Dr. Ragonesi opined Ms. Lewis's mental limitations would cause interpersonal work relationships problems. If the ALJ intended to reject this medical opinion, the ALJ was required to set out a detailed and thorough summary of the facts and conflicting evidence, and state his interpretation of the facts and evidence, and make findings. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Here, the ALJ fell far short of this standard. The ALJ simply found "the medical record suggests the claimant faces many stressors which complicate her attempts to do complex work. Hence the claimant would perform best in a simple, routine work environment with only occasional public interaction was consistent with the opinion of Dr. Ragonesi." Tr. 32. The ALJ's finding addresses the level or complexity of work—simple, routine— that the ALJ determined Ms. Lewis could perform. The finding does not, however, address whether there are jobs Ms. Lewis could perform at that level of work, taking into account

REPORT AND RECOMMENDATION - 7

Dr. Ragonesi's opinion that she has additional limitations pertaining to interpersonal interactions with coworkers and supervisors.

Additionally, the statement the "medical record suggests" Ms. Lewis can perform simple routine work with occasional public interaction is a conclusory reason, and thus insufficient grounds to reject Dr. Ragonesi's opinions about Ms. Lewis's interpersonal work problems. *See Embrey v. Bowen*, 849 F.2d 418 (9th Cir.1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

Accordingly, the Court concludes that the ALJ erred in rejecting Dr. Ragonesi's opinions about Ms. Lewis's limitations regarding interpersonal problems with coworkers and supervisors. This error was harmful because in determining a claimant's RFC, an ALJ must assess all the relevant evidence to determine what capacity the claimant has for work. *See* 20 C.F.R. § 416.945(a). Similarly, hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir.1995)).  Here, as the ALJ did not account for Dr. Ragonesi's opinion about Ms. Lewis's interpersonal work limitations in determining Ms. Lewis's RFC, or in posing questions to the VE, the ALJ harmfully erred.

   *2.     David Morgan, Ph.D.*

In his September 2011, evaluation, Dr. Morgan diagnosed Ms. Lewis with major depressive disorder and observed low motivation, low self-esteem, and limited hope for the future. Tr. 696-700. He opined Ms. Lewis was moderately limited in her ability to perform

1  routine tasks without undue supervision due to "some concentration issues." Tr. 698. He also
2  opined she had moderate limitations in her ability to communicate and perform effectively in a
3  work setting with public contact and maintain work appropriate behavior due to "some social
4  issues." Tr. 698. The ALJ gave Dr. Morgan's opinion significant weight and specifically noted
5  these moderate limitations. Tr. 32. The ALJ concluded that "both Dr. Morgan and Dr.
6  Ragonesi recognized that the claimant's mental impairments would interfere with her ability to
7  work, but not entirely preclude her from participating in work activities." Tr. 32.

8        Ms. Lewis contends the ALJ erred in two ways. She first argues the ALJ erred by failing
9  to "acknowledge Dr. Morgan's finding that performing even routine tasks would require 'undue
10 supervision.'" Dkt. 12 at 12. However, contrary to Ms. Lewis's claim, the ALJ noted the
11 limitation and thus acknowledged it. The ALJ further concluded that even though the limitation
12 "would interfere" with Ms. Lewis's ability to work, it did not preclude her from all work
13 activities. Tr. 32. Ms. Lewis provides no explanation as to why or how the ALJ erred in
14 reaching this conclusion. The Court thus rejects Ms. Lewis's contention as an unsupported or
15 conclusory argument. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2,
16 2008) at * 2 (unpublished opinion) (citing *Northwest Acceptance Corp. v. Lynnwood Equip.,*
17 *Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of
18 claim of error waives issue); *Independent Towers of Washington v. Washington*, 350 F.3d 925,
19 929 (9th Cir. 2003)). Additionally, to the extent Ms. Lewis has not shown how the ALJ erred,
20 she has failed to meet her burden showing that the ALJ committed harmful error. *See Molina v.*
21 *Astrue*, 674 F.3d 1104 (9th Cir. 2012).

22       Next, Ms. Lewis argues the ALJ erred by failing to address "Dr. Morgan's finding that
23 performing even routine tasks would require "undue supervision," and by failing to account for

REPORT AND RECOMMENDATION - 9

the doctor's opinion that she would have problems "maintaining behavior" at work. Dkt. 12 at 12. The record does not support this argument. The doctor did not opine, as Ms. Lewis suggests, that Ms. Lewis could not perform routine tasks unless she received "undue supervision." Instead the record shows that, using a check-box form, Dr. Morgan opined Ms. Lewis had moderate limitations in her "ability to perform routine tasks without undue supervision." Tr. 698. The doctor similarly opined that Ms. Lewis had moderate limitations in maintaining appropriate behavior in the work setting. He did not, however, find that Ms. Lewis could not work due to behavior problems. In short, Ms. Lewis has recast Dr. Morgan's opinions as setting forth limitations that the Mr. Morgan himself did not find.

This is highlighted by examining other portions of Dr. Morgan's evaluation. In his evaluation, the doctor never stated that he believed Ms. Lewis's mental limitations were so severe that she could not perform any work. The doctor did not state that she could not work unless she received "undue supervision"; he did not state that she could not work due to the inability to maintain appropriate behavior at the workplace. Rather he stated "Client appears to have some abilities, as she has been in college courses at times. Client also is able to care for her children, and spends most of her time doing this." Tr. 698. The doctor further opined that Ms. Lewis's ability to work was likely to substantially improve with counseling and medication management, and that the length of time her current functional limitations would last was between three and six months. Tr. 699.

These comments tend to undercut Ms. Lewis's suggestion that Dr. Morgan believed she was more impaired than found by the ALJ, and tend to support the ALJ's finding that Ms. Lewis retained the RFC to perform some limited work activity, as shown by "caring for her disabled son, performing household chores, doing yard work, taking some classes at Clark Community

REPORT AND RECOMMENDATION - 10

College, and going grocery shopping." Tr. 32.  Accordingly, the Court affirms the ALJ's assessment of Dr. Morgan's opinions.

*State Agency Consultants*

Dr. Michael Regets, Ph.D., a state agency psychological consultant, reviewed Ms. Lewis's medical records and assessed her mental functional residual capacity.  Dr. Regets opined Ms. Lewis had moderate limitations in her ability to remember locations and work procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, and perform within a schedule, and complete a normal workday/workweek without interruptions from psychological symptoms.  Tr. 99-100.  Ms. Lewis argues the ALJ erred by failing to account for these assessed limitations.   Dkt. 12 at 14.

In his mental residual functional capacity assessment, Dr. Regets rated Ms. Lewis as moderately limited in the areas mentioned above.  However, Ms. Lewis fails to note that after Dr. Regets assessed these limitations, he determined that despite the limitations, Ms. Lewis could nonetheless perform work that required the ability to sustain concentration and persistence for two hours at a time and could understand, remember, and carry out simple, routine tasks.  Tr. 99-100.  The entirety of his evaluation supports this RFC as he also assessed that Ms. Lewis was not significantly limited in her ability to understand and remember very short and simple instructions or sustain an ordinary routine without special supervision.  Tr. 99-100.  Accordingly, the Court cannot say that the ALJ erred in failing to account for all limitations found by Dr. Regets.

Ms. Lewis also contends that the ALJ failed to account for the opinion of Dr. Anita Peterson, Ph.D., that she was moderately limited in her ability to sustain ordinary work routine without special supervision and complete a normal workday without interruption from

REPORT AND RECOMMENDATION - 11

psychological symptoms. Dkt. 12 at 14.  The record does not support the argument.  Dr. Peterson, a state agency consultant, reviewed Ms. Lewis's medical records in December 2006 as part of a previous application for benefits.  Tr. 611-27.  The ALJ gave weight to this opinion including Dr. Peterson's assessment that Ms. Lewis had moderate limitations in social functioning and concentration, persistence and pace, but could perform "simple work on a fulltime basis."  Tr. 33, 627.  Contrary to Ms. Lewis's claim, Dr. Peterson did not find Ms. Lewis required "special supervision," or that she could not complete a normal workday due to mental health problems.  Rather, the doctor indicated that Ms. Lewis could keep a schedule and follow simple instructions; that in a structured environment she could persist in tasks for up to and beyond two hours; that Ms. Lewis has learned to adapt to negative circumstances and that she has maintained a positive outlook.  Tr. 627.  The doctor concluded that "cl[aimant] is credible regarding alleged conditions, however, not to the point of rendering her unable to perform simple work on a full-time basis."  *Id.*   Accordingly, as the ALJ did not omit a functional limitation found by Dr. Peterson, the Court affirms the ALJ's evaluation of the doctor's opinions.

**C.     Scope of Remand**

Ms. Lewis contends that the Court should remand this matter for an award of benefits. The Court may remand for an award of benefits where the record is fully developed and additional proceedings would serve no useful purpose; the ALJ failed to provide legally sufficient reasons for rejecting evidence; and if the improperly discredited evidence were credited as true, the claimant would be disabled.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  The Court abuses its discretion by remanding for further proceedings where the record establishes no basis for serious doubt that the claimant is not disabled.  *Id*.

REPORT AND RECOMMENDATION - 12

Only in rare circumstances should a Court remand a case for an award of benefits. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  This is not such a case.  Here, the ALJ purported to give great weight to Dr. Ragonesi's medical opinions, yet failed to account for the doctor's opinion that Ms. Lewis's mental impairments would negatively impact her "interpersonal work relationships."  Based on this record, the Court cannot say that Ms. Lewis is disabled as a matter of law.  What still needs to be determined is the impact of the limitations found by Dr. Ragonesi on Ms. Lewis's RFC, and whether based on those limitations there are jobs Ms. Lewis could perform in the national economy.  The Court is not in a position to make these determinations, which involves weighing the evidence and potential expert testimony, in the first instance, on this appeal.  Further proceedings are thus not only useful, but necessary to address and determine the full extent of Ms. Lewis' limitations and whether she can perform gainful work activity.

## CONCLUSION

For the foregoing reasons, the Court recommends **REVERSING** the Commissioner's final decision **REMANDING** and the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ shall reevaluate the medical assessment performed by Dr. Ragonesi and determine whether limitations to co-worker or supervisor contact are required; develop the record as necessary; reassess Ms. Lewis's RFC as needed and proceed to step five with testimony from a vocational expert as appropriate.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **June 16, 2015.**  If no objections are filed, the Clerk shall note the matter for June 19, 2015, as ready for the Court's consideration.  If objections are filed, any response is due within 14 days after being served with

the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed **eight** pages.  The failure to timely object may affect the right to appeal.

DATED this 2nd day of June, 2015.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14